IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Criminal No. 07-405 |
| | ) | |
| MICHAEL BAREFOOT, | ) | |
| | ) | |
| Defendant. | ) | |

FINDINGS OF FACT
AND CONCLUSIONS OF LAW

BLOCH, District J.

Defendant, Michael Barefoot, was indicted by a Grand Jury on November 27, 2007 and charged with two counts of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and one count of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2). Currently before the Court is defendant's Motion to Suppress Evidence and Statements (Doc. #24).

Defendant seeks to suppress evidence and statements, starting with a computer that Allegheny County detectives took from an apartment at 1010 Broadway Avenue in Pitcairn. The Government argues that defendant abandoned his apartment and its contents. In the alternative, the Government argues that Allegheny County detectives reasonably relied on the apparent authority of the landlord to consent to the seizure of the computer.

1

On July 9, 2008, the Court conducted an evidentiary hearing. Detectives Gregory Matthews and Timothy Haney testified on behalf of the government. Aileen Lacivita, Elizabeth Painter and Connie Acosta testified on behalf of the defendant. At the conclusion of the hearing, the Court took the matter under advisement. After obtaining the hearing transcript, the parties submitted additional briefs (Docs. #36 and #37). There appear to be no disputes of material fact.

AND NOW, this 5th day of August, 2008, after a careful review of the Court's notes, hearing exhibits and the facts and law set forth in the parties' briefs, the Court enters the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Criminal Procedure 12(d):

## FINDINGS OF FACT

1. On January 1, 2005, defendant entered into a one-year lease of an apartment at 1010 Broadway Avenue in Pitcairn, Pennsylvania.

2. Defendant's mother, Elizabeth Painter, also signed the lease and provided her home telephone number for contact purposes.

3. At the end of this initial period, the lease was automatically renewed on a month-to-month basis.

4. Either party could have terminated the lease by giving written notice of sixty days, but there is no record evidence that this occurred.

5.  At some point early in 2007, the defendant fell behind in his rent payments.

6.  The landlord, Gregory Beley, called Painter about the matter, and Painter met with Beley to make a payment.

7.  On May 24, 2007, Beley filed a Landlord and Tenant Complaint against defendant and his mother, claiming that defendant was three months behind in his rent payments.

8.  A hearing was held on June 4, 2007, at which Beley, the defendant and Painter appeared.

9.  On this date, judgment was entered against the defendant and Painter for $1,254.50, which included overdue rent payments, water utility fees and judgment costs.

10. After the hearing, the defendant and Beley discussed the matter outside the courtroom.  Defendant expressed his intention to pay his debt.

11. On June 6, 2007, the court issued a Notice of Judgment, which was served on the defendant and Painter.  The Notice of Judgment stated: "Possession granted if money judgment is not satisfied by time of eviction."

12. Sometime later, defendant made a "good faith payment" of $125 to Beley.

13. After a landlord obtains a judgment and it remains unsatisfied, a landlord must submit a "Request for Order of Possession" to start the eviction process.  Deft. Ex. B.

14. Beley never requested an Order of Possession with regard to defendant's apartment at 1010 Broadway.

15. Sometime prior to the May 24 hearing and continuing thereafter, defendant began sleeping on a couch in his mother's apartment in North Versailles. The only items he brought to his mother's apartment were a few items of clothing and a toothbrush.

16. According to Painter's cell phone and home phone records, Beley never attempted to contact defendant by telephone after the June 4 hearing to discuss rent payments or to instruct him to retrieve his personal belongings from the apartment. Deft. Ex. D and E.

17. On or about August 25, 2007, a maintenance worker hired by Beley, Andre Lukotich, was working in the apartment.

18. Lukotich accessed defendant's desktop Compaq computer and found what he thought were images of child pornography.

19. On August 28, 2007, Lukotich reported what he had seen to the Pitcairn police, who relayed the information to the Allegheny County Police Department.

20. Later that day, County Detectives Daniel Mayer and Gregory Matthews met the landlord, Gregory Beley, at the apartment building.

21. Beley told them that he had obtained a "judgment for eviction" in May.

22. Beley showed them a copy of the Landlord and Tenant complaint that he had filed against defendant and his mother.

23. He did not show them a copy of the Notice of Judgment or any document establishing that an eviction had been effected.

24. He told detectives that he had attempted to contact defendant several times and that the utilities had been turned off until he turned them back on two weeks before.

25. There was a "for rent" sign in the front yard and a sign for Beley's construction company.

26. On the porch of the apartment building were a number of boxes and bags, which contained defendant's belongings that the landlord had removed from the apartment.

27. Beley opened the door to the apartment with a key and told detectives that the locks had not been changed.

28. According to Detective Matthews, the living room was "sparse," and the floor was covered with tarps and plastic sheeting, which indicated that renovations were underway. A Compaq desktop computer and related equipment were sitting on a table. Detectives found a dresser in the bedroom containing a pay stub and three personal photographs. Detective Matthews did not observe a bed, bedding or any couches or chairs.

29. Beley told the detectives that he was in the process of "getting rid of the possessions."

30. The detectives then took possession of the Compaq computer.

31. On August 29, 2007, Detective Matthews went to the office of the magistrate district judge and obtained a copy of the Notice of Judgment that Beley had obtained against the defendant. Govt. Ex. #1.

32. In the evening of August 29, 2007, the detectives interviewed Andre Lukotich. He confirmed what he had originally told the Pitcairn police. He stated that he was in defendant's apartment on August 25, 2007, and he turned on defendant's computer. Lukotich told detectives that while he was looking for music files, he found video and still images that he described as showing young children between the ages of 5 and 7 performing sex acts with adults. Lukotich stated that he knew that the defendant had rented the apartment. See Govt. Exs. #2 and #3.

33. On September 4, 2007, Detectives Matthews and Mayer asked Detective Timothy Haney, a computer forensic examiner and computer crime investigator, to examine defendant's computer.

34. Detective Haney conducted a forensic preview, which involved securing the computer's hard drive and searching for files containing still images and video images.

35. Detective Haney identified a number of images of what appeared to be prepubescent females engaged in sex acts with adult males.

36. Detective Haney also found information linking the defendant to the computer, including an email address, "barefoot_m@msn.com," and software registration information identifying the defendant as the user.

37. Detective Matthews testified that after Detective Haney briefed him about what he had found, he obtained a search warrant as a "precaution."

38. He also testified that he believed that he could have obtained a warrant based on what Lukotich had told Pitcairn police but that he wanted to do more background work.

39. Detective Haney concurred with Detectives Matthews and Mayer that it would be advisable to obtain a search warrant.

40. In the affidavit of probable cause, Detectives Matthews and Mayer stated that they had taken possession of the computer based on the consent of Gregory Beley. They did not mention that Detective Haney had already conducted an initial forensic preview of the computer. Govt. Ex. #2.

41. After the warrant was obtained, Detective Haney conducted a full forensic analysis on September 5, 2007.

42. Detective Haney found at least 10 still images of child pornography. He also found seven video files containing child pornography.

43. On the basis of this information, Detectives Matthews and Mayer obtained a criminal complaint and an arrest warrant for the defendant.

44. On September 6, 2007, Detectives Matthews and Mayer found defendant at his mother's apartment in North Versailles, where he was sitting at a computer that displayed an image of adult pornography.

45. Upon arresting defendant, Detectives Matthews and Mayer advised him of his Miranda rights. They then transported defendant to County Police headquarters, where he was placed in an interview room. They reviewed a "Rights Warning/Waiver" form with the defendant, who read and signed it. Govt Ex. # 4.

46. Defendant admitted that he used the Compaq computer to access adult and child pornography, and he explained how the images were located and loaded onto his computer.

47. Defendant said that he had been in the apartment from January 2005 until May or June 2007, when the power was cut off. Defendant stated that when the power was turned on again, he last used the computer in July 2007.

48. Detectives Matthews and Mayer did not use force or threaten defendant during the interview, which lasted approximately one hour. Defendant was sober, cooperative and remorseful throughout.

49. After the interview, Detectives Matthews and Mayer applied for a search warrant regarding the computer in defendant's mother's apartment.  Govt Ex. # 3.

50. In the affidavit of probable cause, the detectives recounted how they had obtained a search warrant for defendant's Compaq computer based on the information provided by Andre Lukotich. The affidavit stated that after they obtained a search warrant for the contents of the Compaq computer, "[t]he computer was then submitted for forensic analysis."  Govt. Ex. # 3.

51. On September 7, 2007, after obtaining this second warrant, Detectives Matthews and Mayer went to defendant's mother's apartment and seized a HP desktop computer and a bag containing 28 recordable compact disks, which they turned over to Detective Haney.

52. On September 12, 2007, Detective Haney performed a full forensic analysis of the computer's hard drive and the compact disks.  On the hard drive, he found thousands of images of pornography, both adult and child.  On one compact disk, he found approximately 200 images of child pornography commingled with thousands of images of adult pornography.

## CONCLUSIONS OF LAW

I.      Defendant's Arguments

1.  Defendant first contends that his computer was seized in violation of the Fourth Amendment to the United States Constitution.  He argues that the warrantless seizure was

unreasonable because the county detectives should have known that the landlord had no authority to consent to the search of defendant's apartment and his computer. Therefore, he argues that this and the remaining evidence and his statements should be suppressed because they are the fruit of this initial unlawful search and seizure. In the alternative, he seeks to suppress statements he made to police on Miranda grounds and challenges the legality of the search warrant used to search his mother's computer.

II.      The Fourth Amendment

2.  The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. On a motion to suppress, the government bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable. United States v. Ritter, 416 F.3d 256, 261 (3d Cir. 2005).

III.     Was the Search and Seizure of Defendant's Computer Lawful?
         A.  Standing

3.  The government initially frames the issue as one of standing, but, as the Supreme Court attempted to make clear in Rakas v. Illinois, 439 U.S. 128, 140 (1979), the issue is ultimately

10

resolved "under the heading of substantive Fourth Amendment doctrine." See also United States v. Felton, 753 F.2d 256, 258-59 (3d Cir. 1985) ("[W]e have decided this case on the basis of this expectation [of privacy] rather than on 'standing.'"). The parties do not dispute that defendant's lease created a possessory interest in the apartment. What is in dispute is whether defendant abandoned the apartment and his belongings, thereby surrendering his reasonable expectation of privacy.

B. Abandonment

4. The first issue raised by the defendant "requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect." Rakas, 439 U.S. at 140. "With few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no." Kyllo v. United States, 533 U.S. 27, 31 (2001). These protections extend to apartments and rented rooms, and thus a landlord may not consent to a warrantless search of a rental property occupied by a tenant. Chapman v. United States, 365 U.S. 610, 616-17 (1961).

5. On the other hand, a warrantless search of abandoned property does not violate the Fourth Amendment. Abel v. United States, 362 U.S. 217, 241 (1960) (personal property discarded in vacated hotel room). A defendant must have a legitimate expectation

of privacy in the premises in order to invoke the protections of the Fourth Amendment. Rakas, 439 U.S. at 143 (automobile).

6. "Proof of intent to abandon property must be established by clear and unequivocal evidence." United States v. Fulani, 368 F.3d 351, 354 (3d Cir. 2004) (citing United States v. Moody, 485 F.2d 531, 534 (3d Cir. 1973)). "When a person voluntarily abandons his privacy interest in property, his subjective expectation of privacy becomes unreasonable, and he is precluded from seeking to suppress evidence seized from it." United States v. Stevenson, 396 F.3d 538, 546 (4th Cir.), cert. denied, 544 U.S. 1067 (2005).

7. After falling behind in his rent, defendant began to sleep on a couch in his mother's apartment. On June 6, 2007, the landlord obtained a judgment against the defendant for failing to pay rent for three months. However, the fact that he was behind in the rent and was not sleeping at the apartment are not enough to show defendant's intent to abandon the apartment. Stevenson, 396 F.3d at 544-45 ("[T] fact that [defendant] was behind in rent and did not show any ability to pay either back or future rent would not automatically preclude a finding that he intended to return to the apartment."); United States v. Robinson, 430 F.2d 1141-1143-44 (6th Cir. 1970) ("[T]he building manager's belief that appellant had abandoned the apartment was premised solely on the fact of

appellant's absence and thus sheds no light on appellant's intention to return to the apartment.").

      8.  Furthermore, defendant's actions suggest the intent to remain in possession of the apartment. Prior to the filing of the landlord-tenant complaint, defendant's mother met with the landlord and made a rent payment. Defendant responded to service of the landlord's complaint and attended the hearing held on June 4, 2007. After the hearing, he expressed his intent to pay his debt and later made a payment of $125, which the landlord described as having been made in "good faith." Defendant stored a number of personal belongings, including his computer, furniture and other unknown items that Beley had removed and placed on the porch. There is no evidence that these items were boxed and removed at defendant's request or that he expressed a desire to surrender his personal property to the landlord. Defendant also told detectives that he had returned to the apartment to access his computer on at least one occasion in July. And finally, unlike the defendant in Stevenson, the defendant here made no written statements indicating his intent to terminate his lease or abandon his apartment and its contents. 396 F.3d at 544-45.

      9.  The Court finds that the government has not met its burden of showing by clear and unequivocal evidence that defendant had abandoned his apartment and his personal belongings kept therein.

C. <u>Apparent Authority</u>

10. The Government argues in the alternative that at the time of the search, the detectives reasonably believed that Beley had the requisite authority to consent to the detectives' search of the apartment and seizure of defendant's computer. <u>See</u> <u>Illinois v. Rodriguez</u>, 497 U.S. 177, 188-89 (1990). Even if the consenting party does not, in fact, have the requisite relationship to the premises, there is no Fourth Amendment violation if an officer has an objectively reasonable, though mistaken, good-faith belief that he has obtained valid consent to search the area. <u>United States v. Brazel</u>, 102 F.3d 1120, 1148 (11th Cir. 1997) (citing <u>Rodriguez</u>, 497 U.S. at 186).

11. Beley informed detectives Mayer and Matthews that he had obtained a "judgment for eviction" in May for non-payment of rent. Beley showed them nothing more than a copy of a hand-written landlord-tenant complaint. (Detective Matthews did not obtain a copy of the judgment until the next day.) Beley told detectives that he had hired Lukotich to clean and paint the apartment. Beley had removed most of defendant's belongings, which the detectives observed on the front porch. Beley used his key to let the detectives into the apartment, and he told detectives that he had not changed the locks. Inside, the detectives observed little signs of occupation, which is consistent with the landlord having removed defendant's belongings, other than the computer and other items.

There were no chairs in the apartment, and no bed or bedding in the bedroom. It appeared that the apartment was in the process of being renovated.

12. The Court finds that Detectives Matthews and Mayer reasonably believed that Beley had apparent authority to consent to their search of defendant's apartment and their seizure of his computer and related equipment. Any mistake made by the detectives as to whether defendant had vacated the apartment was a mistake of fact, not one of law. <u>United States v. Elliott</u>, 50 F.3d 180, 187 (2d Cir. 1995), <u>cert. denied</u>, 516 U.S. 1050 (1996); <u>Brazel</u>, 102 F.3d at 1148-49 (search constitutional even though landlord misinformed officer that apartment was vacant); <u>see also</u> <u>United States v. Green</u>, 102 F.Supp.2d 904, 911-12 (S.D.Ohio 2000) (police relied on owner, who was mistaken about whether apartment was vacant). Beley had not completed the eviction process but he told the detectives that he had. The "standard of reasonableness is governed by what the law enforcement officers know, not what the consenting party knows." <u>United States v. James</u>, 353 F.3d 606, 615 (8th Cir. 2003). What these detectives knew on August 28, 2007, came from Beley's statements and their own observations of the premises. Beley told them that he had obtained what he described as a "judgment for eviction" for non-payment of rent, that defendant had not paid rent in six months and that he had removed defendant's belongings from the apartment and placed them in boxes on the porch. Beley also

confirmed that he had hired Lukotich to work in the apartment to prepare it to be rented again.

13. It is a closer question whether it was reasonable for the detectives to believe that Beley could consent to their removal of defendant's computer. While the facts indicate that Beley believed that he had taken possession of the apartment, he also stated that he was in the process of disposing of defendant's belongings. Beley told detectives that he had tried to contact defendant "several times," but there is no evidence that Beley told them that he had actually spoken to the defendant about the apartment and its contents.

14. Police officers may not always accept a person's invitation to enter premises and seize personal property therein. "Even when the invitation is accompanied by an explicit assertion that the person [has authority to consent], the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry." Rodriguez, 497 U.S. at 188. While it may have been reasonable, though mistaken, for the detectives to believe that Beley had taken possession of the apartment, it was unreasonable to assume that Beley could consent to the seizure of defendant's computer.[1]

---

[1] There is no evidence that the detectives observed illegal or incriminating material in plain view on the computer's monitor or anywhere else in the apartment. See Horton v. California, 496 U.S. 128, 141 (1990) (allowing officers to seize incriminating evidence
(continued...)

16

15. Beley did not show the detectives any paperwork that would have reasonably indicated he had taken legal possession of defendant's personal belongings. The landlord-tenant complaint, which the detectives saw, was based only on defendant's non-payment of rent and utilities. In addition, Beley made no statements to the detectives that would have indicated that the defendant had, either through explicit statements or through his actions, abandoned his belongings.

16. An eviction proceeding in which a landlord prevails, without more, has no bearing on the disposition of any personal belongings left on the premises. In Pennsylvania law, "[i]t is well-established that a lessor cannot infer abandonment of a lessee's personal property that remains at the leased premises following tenant's departure." Hoyt v. Christoforou, 692 A.2d 217, 222 (Pa.Super.Ct. 1997).

17. By assuming that the landlord's representations concerning an eviction also established authority to consent to the computer's seizure, the detectives made a mistake of law, which, even if reasonable, cannot establish apparent authority. See Brazel, 102 F.3d at 1149 (comparing United States v. Elliott, 50 F.3d 180, 187 (2d Cir. 1995) (since the question whether a given unit is unleased is one of fact, the officers' belief that an area

---

[1](...continued)
in plain view during the course of a lawful search).

was vacant and thus the owner could consent to a search was a factual error), <u>cert. denied,</u> 516 U.S. 1050 (1996), <u>with</u> <u>United States v. Brown</u>, 961 F.2d 1039, 1041 (2d Cir. 1992) (warrantless entry of tenant's apartment was unconstitutional where officer made the mistaken legal conclusion that a landlord's authority to turn off electrical appliances or lights also validated the officers' search of the apartment)).

18. The surrounding circumstances here should have prompted the officers to make additional inquiries and to simply obtain a search warrant if their doubts persisted.[2] <u>Rodriguez</u>, 497 U.S. at 188. The Court finds that Detectives Matthews and Mayer unreasonably believed that Beley had apparent authority to consent to the seizure of defendant's computer and related equipment, resulting in a violation of defendant's expectation of privacy as protected by the Fourth Amendment.

D. <u>Suppression</u>

19. The next question is whether the evidence gathered from the search of defendant's computer should be suppressed. "Whether the exclusionary sanction is appropriately imposed in a particular case, . . . is 'an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke

_____

[2] The officers apparently realized this, as they later sought and obtained a search warrant for the computer after it had already been seized and searched.

the rule were violated by police conduct.'" <u>United States v. Leon</u>, 468 U.S. 897, 906 (1984) (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 223 (1983)).

20. While the Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," U.S. Const. amend. IV, it "contains no provision expressly precluding the use of evidence obtained in violation of its command." <u>Arizona v. Evans</u>, 514 U.S. 1, 10 (1995) (citation omitted). Nevertheless, the courts have created an "exclusionary rule [that] operates as a judicially created remedy designed to safeguard against future violations of Fourth Amendment rights through the rule's general deterrent effect." <u>Id.</u> (citations omitted).

21. "The purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim . . . . Instead, the rule's prime purpose is to deter future unlawful police conduct." <u>United States v. Calandra</u>, 414 U.S. 338, 348 (1974). "The rule is calculated to prevent, not to repair. Its purpose is to deter - to compel respect for the constitutional guaranty in the only effectively available way – by removing the incentive to disregard it." <u>Elkins v. United States</u>, 364 U.S. 206, 217 (1960). "[T]he need for deterrence and hence the rationale for excluding the evidence are strongest where the Government's unlawful conduct would

result in imposition of a criminal sanction on the victim of the search." <u>Calandra</u>, 414 U.S. at 348.

22. The exclusionary rule mandates that evidence derived from constitutional violations may not be used at trial if illegally derived evidence is considered to be "fruit of the poisonous tree." <u>Wong Sun v. United States</u>, 371 U.S. 471, 487-88 (1963). The question is whether the derived evidence came directly from the exploitation of the constitutional violation or whether the derived evidence was obtained "by means sufficiently distinguishable to be purged of the primary taint." <u>Id.</u> at 488.

23. As the exclusionary rule has evolved, the courts have also developed a number of exceptions to it, including the independent source, inevitable discovery and attenuation doctrines, and a good faith exception. <u>See</u>, <u>e.g.</u>, <u>Silverthorne Lumber Co. v. United States</u>, 251 U.S. 385, 392 (1920) (independent source); <u>Nix v. Williams</u>, 467 U.S. 431, 441-44 (1984) (inevitable discovery); <u>Nardone v. United States</u>, 308 U.S. 338, 341 (1939) (attenuation); <u>Arizona v. Evans</u>, 514 U.S. 1, 14 (1995) (good faith). The government does not argue that any of these exceptions apply here, but the Court finds that there was an independent source--beginning with Andre Lukotich--for the information used to justify the search warrant for defendant's computer.

24. As noted above in Section III.C, the initial warrantless seizure and subsequent search were illegal. But this is

only the beginning of the analysis.  After detectives seized and searched defendant's computer without a warrant, they applied for a search warrant, as a "precaution."  Detective Haney concurred that this was "advisable."   In their affidavit of probable cause, Detectives Matthews and Mayer did not refer to Detective Haney's initial search or cite evidence obtained during this warrantless search.  The detectives recounted their discussion with the Pitcairn police, the meeting with the landlord, and their interview of Andre Lukotich.  See Govt. Ex. #2.

25. On the basis of this information, all of which they knew prior to the warrantless search, the detectives got a search warrant for defendant's computer.  The search conducted pursuant to this warrant revealed that defendant's computer contained video and still images of child pornography.  With the evidence discovered during this search, the detectives obtained an arrest warrant for the defendant, who, after being arrested, made incriminating statements.[3]  Furthermore, on observing defendant at his mother's computer during his arrest, detectives then got a search warrant for her computer and found additional images of child pornography.[4]

26. The exclusionary rule is applicable only "where its remedial objectives are thought most efficaciously served."

---

[3] Defendant's argument concerning whether he waived his Miranda rights is addressed below in Section V.

[4] Defendant's argument concerning the legality of this warrant is discussed below in Section IV.

<u>Calandra</u>, 414 U.S. at 348. "Its deterrence benefits [must] outweigh its 'substantial social costs.'" <u>Pennsylvania Bd. Of Probation and Parole v. Scott</u>, 524 U.S. 357, 363 (1998) (quoting <u>United States v. Leon</u>, 468 U.S. 897, 907 (1984)). If there is an independent source for the information, then the rule's remedial objectives are not served. The Supreme Court explained rationale for the "independent source" doctrine here:

> [T]he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a <u>worse</u>, position that they would have been in if no police error or misconduct had occurred . . . . When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation.

<u>Nix v. Williams</u>, 467 U.S. 431, 443 (1984). According to the Third Circuit, the independent source doctrine is "by its very nature... only applicable where the police have in fact obtained a warrant. In addition, it will not give the police incentive to search first without a warrant, because any information discovered in an unlawful search is useless to the police in a subsequent warrant application." <u>United States v. Herrold</u>, 962 F.2d 1131, 1144 (3d Cir. 1992).

27. <u>Segura v. United States</u>, 468 U.S. 796 (1984), is instructive. The police entered an apartment without a warrant, arrested the occupants and then remained there unlawfully for 19

hours while a search warrant was obtained.  Id. at 800-01; see

Hudson v. Michigan, 547 U.S. 586, 600 (2006) (discussing Segura,

describing this as "an entry as illegal as can be").  The warrant

was based solely on information known prior to the illegal entry.

Id.  The Court found that exclusion of the evidence was not

warranted:

> None of the information on which the warrant
> was secured was derived from or related in any
> way to the initial entry into [defendant's]
> apartment; the information came from sources
> wholly unconnected with the entry and was known
> to the agents well before the initial entry.
> No information obtained during the initial
> entry or occupation of the apartment was needed
> or used by the agents to secure the warrant.
> It is therefore beyond dispute that the
> information possessed by the agents before they
> entered the apartment constituted an
> independent source for the discovery and
> seizure of the evidence now challenged.

Id. at 814.  The facts in the instant case compel a similar

conclusion, here in a personal property context.  See United States

v. Lifshitz, 369 F.3d 173, 190 (2d Cir. 2004) ("Individuals

generally possess a reasonable expectation of privacy in their home

computers.").

28. The Supreme Court again addressed the independent

source doctrine in Murray v. United States, 487 U.S. 533 (1988), and

enunciated a two-part test: (1) whether the decision to seek the

warrant was prompted by what police had seen during the initial

entry; and (2) whether the "information obtained during the entry

23

was presented to the Magistrate and affected his decision to issue the warrant." Id. at 542 (remanding case for additional factfinding on first question). If these questions are answered "no," then the search warrant is an independent source of the challenged evidence, and that evidence can be introduced at trial. United States v. Perez, 280 F.3d 318, 339-40 (3d Cir. 2002); Herrold, 962 F.2d at 1140-41.

29. It is clear in this case that both questions are answered in the negative. First, Detective Matthews testified that he believed he could have obtained a search warrant based solely on the information that Lukotich provided to Pitcairn police. Nevertheless, he waited until he gathered additional information from the landlord, who confirmed that the computer belonged to the defendant, and interviewed Lukotich, who described, just as he had to Pitcairn police, how he had come to find the images of child pornography on defendant's computer. Second, a review of the affidavit of probable cause makes it clear that the detectives provided no tainted information to the magistrate when applying for the search warrant.[5] In addition, there is no evidence that

---

[5] In their warrant affidavit, the detectives made no mention of the fact that they had already searched the computer. At the evidentiary hearing, defendant made light of this fact but has made no argument that this warrant is somehow tainted by it. See, e.g., Murray, 487 U.S. at 536 (noting that district court had rejected defendants' arguments "that the warrant was invalid because the agents did not inform the Magistrate about their prior warrantless entry, and that the warrant was tainted by that entry.").

defendant's subsequent arrest, his incriminating statements and the evidence of child pornography found on his mother's computer were tainted by the initial warrantless search of defendant's computer.

30. Accordingly, the Court finds that the evidence found on defendant's computer pursuant to the search warrant (Govt. Ex. #2) was sufficiently free of the taint of the warrantless search to render it admissible at trial. Furthermore, the evidence found on defendant's mother's computer and defendant's statements are admissible as well. Therefore, the Court will deny defendant's Motion to Suppress Evidence and Statements with regard to this evidence.

IV.      Did the Warrant to Search Computer Equipment at Defendant's Mother's Apartment Meet with Constitutional Requirements?

31. Defendant further argues that the warrant obtained to search his mother's apartment lacked particularity and was not supported by probable cause. When Detectives Mayer and Matthews found defendant at his mother's apartment, he was in possession of a computer, on which was displayed adult pornography. Defendant contends that this did not amount to probable cause, and that, furthermore, the warrant lacked particularity in its description of the items to be searched for and seized.

32. The Government argues that the search warrant was based on probable cause and met with the Fourth Amendment's particularity requirement. According to the Government, the

affidavit of probable cause provided enough information for the magistrate to make a reasoned determination that a crime had been committed and that evidence may exist on the computer to which had access at his mother's apartment.  Lastly, the Government asserts that even if the Court finds that probable cause did not exist for the issuance of the warrants, the detectives had a good-faith belief that they had a valid warrant and that the warrant was in fact supported by probable cause.

33. A district court exercises a deferential review of the initial probable cause determination made by the magistrate or district justice.  See United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000) (citing Illinois v. Gates, 462 U.S. 213, 236 (1983)). A reviewing court must determine only that the issuing authority had a substantial basis for concluding that probable cause existed to uphold the warrant.  Id.  The task of the magistrate or district justice is to make a practical commonsense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  Id.

34. This Court finds that the information contained in the affidavit presented to the district justice in this case (Govt. Ex. #3) provided a substantial basis for concluding that a search would uncover evidence of child pornography.

35. Specifically, the warrant sets forth the following facts:

> 1) Andre Lukotich reported to police that he had found what he believed were images of child pornography on a computer in the apartment he was renovating at 1010 Broadway in Pitcairn;
>
> 2) On August 28, 2007, county detectives met with the landlord, Gregory Beley, who granted them permission to enter the apartment, and they took possession of a Compaq computer;
>
> 3) On September 4, 2007, the detectives obtained a search warrant for the computer;
>
> 4) On September 5, 2007, Detective Haney, a law enforcement officer with thirty years' experience, including ten years as a computer forensic examiner and computer crime investigator with the Allegheny County Police Department, conducted a forensic analysis of the computer's hard drive and found still images and video images of naked, pre-pubescent females engaged in sex acts with adult males;
>
> 5) Detective Haney found software installation information identifying the defendant as the computer's registered user;
>
> 6) On September 6, 2007, the affiants found the defendant at his mother's apartment, where he was viewing adult pornography on a personal computer; and
>
> 7) Child pornography was commingled with adult pornography on the Compaq computer that was found at 1010 Broadway in Pitcairn.

36. A magistrate or district justice may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where the evidence is

likely to be kept, based on the nature of the evidence and the type of offense.  See United States v. Hodge, 246 F.3d 301,207 (3d Cir. 2001) (citing Whitner, 219 F.3d at 296).

37. Considering all of the facts in the affidavit and the normal inferences drawn therefrom, there was a substantial basis for a finding of probable cause to search the personal computer that the defendant had access to at the time of his arrest in his mother's apartment.  The detectives made the reasonable inference that any computer to which defendant would have access may contain evidence of child pornography.  That they knew that he had commingled child pornography with adult pornography reinforces their conclusion.

38. Furthermore, the Court finds that the warrant meets with the Fourth Amendment's particularity requirement.  "The warrant here was neither general or so plainly in violation of the particularity requirement that the executing officers could not have reasonably trusted in its legality."  See United States v. $92,422.57, 307 F.3d 137, 149 (3d Cir. 2002).  The warrant's description of the items to be searched in the apartment is limited to computer hardware, software and related media, and written materials containing information about passwords and internet website names.  The warrant is even specific in identifying computer files containing images of "children nude, semi-nude, or wearing underwear with no other garmet [sic] covering the underwear."  Govt. Ex. #3.  Furthermore, Detective Haney testified that this warrant's

description has been used in hundreds of warrants concerning such computer searches.

39. Therefore, the Court will deny defendant's Motion to Suppress Evidence and Statements with regard to the evidence obtained from the search of Painter's computer.[6]

V.      Are the Statements Defendant Made to Police After His Arrest Admissible?

40. Defendant seeks to suppress statements he made to police subsequent to his arrest in this case. The Court finds that defendant was properly given his <u>Miranda</u> rights, indicated that he understood them, and thereafter signed a "Rights Warning/Waiver" form and that defendant made the incriminating statements knowingly, voluntarily, and intelligently, without threat of force or coercion.

41. In <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), the Supreme Court concluded that, in the context of "custodial interrogation," certain procedural safeguards are necessary to protect a defendant's Fifth and Fourteenth Amendment privilege against self-incrimination. Thus, "unless the government has advised a defendant of his rights, it cannot put into evidence

---

[6] Alternatively, the court finds that even if probable cause was wanting, the evidence obtained through the search of defendant's mother's computer is admissible under the good faith exception to the exclusionary rule. <u>United States v. Leon</u>, 468 U.S. 897 (1984). Specifically, the affidavit filed in support of the warrant in this case was not so lacking in indicia of probable cause as to render the officer's belief in its existence entirely unreasonable. Defendant does not argue otherwise.

statements stemming from the 'custodial interrogation of the defendant.'" <u>Young v. Patten</u>, 710 F.2d 956, 961 (3d Cir. 1983), <u>reversed on other grounds</u>, 467 U.S. 1025 (1984); <u>see also</u> <u>Alston v. Redman</u>, 34 F.3d 1237, 1243-44 (3d Cir. 1994), <u>cert.</u> <u>denied</u>, 513 U.S. 1160 (1995).

42. The government must also show that defendant voluntarily waived his Miranda rights. <u>United States v. Velasquez</u>, 885 F.2d 1076, 1086 (3d Cir. 1989). Whether a statement was voluntary is determined from the "totality of all the surrounding circumstances [including] both the characteristics of the accused and the details of the interrogation." <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226 (1972). This "totality of the circumstances" test seeks to determine whether the statement is the product of an essentially free and unconstrained choice by its maker. <u>Id.</u> at 225. If the speaker's will was overborne and his capacity for self-determination critically impaired, the use of the statement offends due process. <u>Id.</u> at 225-26.

43. The Government has established that the defendant was properly advised of his <u>Miranda</u> rights, acknowledged that he understood these rights and thereafter signed the "Advice of Rights" form. Govt. Ex. #4. The evidence shows that the interrogation was conducted without threat or force and that defendant was rational, cooperative and sober. Based upon the totality of the circumstances, the Court finds that defendant's statements were made

knowingly, voluntarily, intelligently and without threat or coercion. Defendant's motion to suppress these statements will therefore be denied.

## **CONCLUSION**

For the reasons stated above, defendant's Motion to Suppress Evidence and Statements (Doc. #24) will be denied. An appropriate Order follows.

<u>s/Alan N. Bloch</u>
United States District Judge

Dated:     August 5, 2008

ecf:     Counsel of record